**UNITED STATES v. GANEY et al.**

No. 160, Docket 21886.

United States Court of Appeals
Second Circuit.

Argued Feb. 16, 1951.

Decided March 5, 1951.

542

------

Emanuel Tacker, Joseph K. Guerin, Moses Polakoff and Robert J. Fitzsimmons, all of New York City, for appellant Ganey.

John B. Avanzino, Brooklyn, N. Y., John B. Avanzino, and Joseph Lombardo, Brooklyn, N. Y., of counsel, for appellant Fiscella.

Irving H. Saypol, U. S. Atty., New York City, Bruno Schachner, David S. Carton and Harold J. Raby, Asst. U. S. Attys., all of New York City, of counsel, for appellee.

Before AUGUSTUS N. HAND, CHASE and CLARK, Circuit Judges.

PER CURIAM.

The defendants were deputy collectors of Internal Revenue for the Third New York Collection District attached to the Special Investigation Unit, known as the Fraud Unit. The defendant, Ganey, was put in charge of that unit on its reorganization in July 1947, and the defendant Bessell was appointed Assistant Division Chief to Ganey. Cannon was appointed to the Fraud Unit sometime after March 1948, and Galgano and Fiscella were attached to it during the entire period covered by the indictment. In July 1948, Bessell was transferred by the Collector from the Fraud Unit to the Warrant Squad. He was later arrested by Treasury Agents while leaving the apartment of a taxpayer named Powetz with $5,000 in cash which had been paid to him as a bribe. Following his indictment for that offense, Bessell disclosed the past activities of himself, Ganey and other members of the Fraud Unit which resulted in the present indictment in nine

separate counts charging the defendants with a general conspiracy to defraud the United States of the honest and impartial services of the defendants as revenue officers through bribe taking, extortion, and solicitation. Bessell, after a plea of guilty to all counts of the indictment, testified for the government as its principal witness. The testimony involved four transactions. The first affected the taxable income of Kenmoor, Inc. Bessell testified that Ganey told him that Cannon was to send to the Fraud Unit a decoy letter to the effect that Kenmoor was violating the revenue laws. Bessell thereafter summoned the taxpayer who was told that its method of recording cash sales seemed irregular, and that it would hear further from the Bureau. Bessell went on to say that he reported these transactions to Ganey and that a few days later Cannon came into Bessell's room with an envelope containing $2900 in cash which he offered to Bessell saying: "This is the money from Kenmoor," and Ganey said: "We will split this three ways."

The second transaction affected the taxable income of Sherman Chevrolet Inc. In January 1948, Galgano was investigating a payment to Sherman Chevrolet, Inc. for the sale of a car which the latter company had not reported on its books. Galgano reported this to Bessell and they discussed the matter with Ganey who advised Bessell that somebody would come up to see him on the case and told him to see "what the traffic would stand." Subsequently Sherman, the president of Sherman Chevrolet, came to the revenue office with his brother-in-law Turchin, and introduced Turchin to Bessell who testified that Turchin had offered him $4,000, that Ganey had said to him that the sum was satisfactory, and that Turchin thereafter placed the money in Bessell's desk drawer, who gave the money to Ganey who, in the presence of Galgano, said that it would be split three ways.

The third transaction affected the taxable income of Kreichman from whom Bessell collected $3,000 in April 1948, turning over $1500 to Ganey. After this Bessell's transfer from the Fraud Squad to the Warrant Squad took place. He testified that he

turned over his files to Ganey, reminded him that he had given him $1500 on the case and told him to close it.

The fourth transaction affected the taxable income of Harry Ross, proprietor of a bargain store, whom Bessell had known for some years. By reason of this acquaintance, when Ross received a call from the Fraud Unit, he went to see Bessell. Ross' attorney thereafter spoke with the defendant Fiscella, a member of the Fraud Squad, who was in charge of the Ross matter. Bessell conferred with Fiscella at his office and they agreed that Bessell should ask Ross' attorney for $1500 to settle matters. There was evidence that this was paid and that Fiscella told Bessell that $1000 of it would be split three ways between Ganey, Bessell and Fiscella. This transaction occurred in November 1948 after Bessell had been transferred from the Fraud to the Warrant Unit.

The appellants argue that the indictment related to more than one conspiracy and that statements by one of the co-conspirators implicating other defendants in only one of the conspiracies should have been rejected as prejudicial to defendants who were not engaged in the one conspiracy. There was however substantial evidence to show a single conspiracy in which all five of the defendants named in the title hereof were engaged and that it continued after Bessell was transferred from the Fraud Unit. In order to carry out any one of the four transactions we have mentioned it seems to have been necessary to have the cooperation of Ganey who at all times was the head of the Fraud Unit. In the case of each transaction except the fourth there was direct evidence that Ganey shared in the money paid by the various taxpayers. In the fourth, which closely resembled the others in its dominant object to raise money through favoring taxpayers, there was testimony by Bessell against Fiscella. The latter had already closed the Kreichman case at the direction of Ganey and had been told by Kreichman's accountant that Bessell was crooked and had shaken him down in that transaction. In the Ross case there was not only direct testimony by Bessell that Fiscella was paid but also proof that

the amount to be paid was not adjusted until Fiscella was interviewed by Bessell. The direct proof that Ganey had been paid in the first three transactions, that he remained the head of the Fraud Unit throughout the period of all four transactions, and that he affixed his initials approving the closing of the Ross case, that Fiscella had closed the third transaction, and had been primarily active in the fourth, was enough to hold both Ganey and Fiscella as co-conspirators in all four and to sanction admissions as to guilt by a co-conspirator of the defendant Ganey.

 Appellants' further objection that the counts of the indictment charging extortion, bribe taking and solicitation were inconsistent, is without foundation. Moreover, it did not affect any of the defendants, for there was no cumulative sentence imposed because of the joinder of more than one substantive count against any particular defendant. The objection to the testimony about the typewriter on which the decoy letter was written, and to impeachment by the government of its own witness, is also without merit, as well as the criticism of the judge's charge.

Judgments affirmed.