Roy Solen DAILY, Anthony Charles Grech, Samuel Russell Quinn and James Ribero, Appellants,

v.

UNITED STATES of America, Appellee.

No. 16414.

United States Court of Appeals Ninth Circuit.

Sept. 2, 1960.

Robert S. Bixby, Edward L. Cragen, San Francisco, Cal., for appellant Ribero.

Benjamin M. Davis, San Francisco, Cal., for appellant Quinn.

Lynn J. Gillard, U. S. Atty., John H. Riordan, Jr., Frederick E. Watson, Asst. U. S. Attys., San Francisco, Cal., for appellee.

Before STEPHENS, MAGRUDER and HAMLEY, Circuit Judges.

STEPHENS, Circuit Judge.

Sixteen persons were accused in one count of an indictment of conspiring, in contravention of 18 U.S.C. § 371, to violate the federal narcotics laws, specifically 26 U.S.C. § 4705(a). In addition, four persons and others unknown were named as co-conspirators but were not indicted. The charges against eight of those who were indicted have been dismissed, and another of the sixteen persons originally indicted was granted a separate trial. Three of the remaining seven defendants were acquitted by the jury in the District Court. Four were convicted. These four have appealed. In this opinion, however, we decide the appeals of appellants Ribero and Quinn only. Daily and Grech, the other two appellants, have not submitted briefs as required by the Rules of Practice of this court. Consequently, disposition upon the merits of their claims must await the determination of a pending motion to dismiss their appeals.

Appellants Ribero and Quinn claim that the United States alleged a single overall conspiracy in its indictment against them yet proved multiple conspiracies at the trial, and that, assuming the proof did tend to show one overall conspiracy, the evidence was insufficient to connect either Ribero or Quinn with or to the general scheme.

In Kotteakos v. United States, 1946, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557, the Supreme Court held that in a case where one overall conspiracy is alleged yet several are proved at the trial, the variance between the indictment and the proof may well be prejudicial error as to one or more of the defendants. Unlike Kotteakos, in which the government conceded the existence of a variance [see Blumenthal v. United States, 1947, 332 U.S. 539, 547–548, 68 S.Ct. 248, 92 L.Ed. 154], we are faced in the appeals of Ribero and Quinn with the initial question of whether the alleged, single, overall conspiracy was proved. See Bridgman v. United States, 9 Cir., 1950, 183 F.2d 750, 754. If so, there is no variance which might affect the substantial rights of any defendant.

■ To prove a single conspiracy the prosecution must show, among other things, that all the defendants agreed to effectuate a central criminal design, in this case an alleged scheme to dispose of narcotics in violation of federal law. As has so often been remarked, a partnership in crime is seldom evidenced by a written agreement or other writing between or among the partners. Hence, a finding of agreement to violate the law ordinarily must rest upon an inference drawn from relevant and competent circumstantial evidence, including the conduct of the defendants. American Tobacco Co. v. United States, 1946, 328 U.S. 781, 809, 66 S.Ct. 1125, 90 L.Ed. 1575; Nilva v. United States, 8 Cir., 212 F.2d 115, 121, certiorari denied 1954, 348 U.S. 825, 75 S.Ct. 40, 99 L.Ed. 650. The government need not prove that each accused knew the identity and function of all his alleged co-conspirators or that all worked together consciously to achieve a desired end. Berenbeim v. United States, 10 Cir., 1947, 164 F.2d 679, 684, certiorari denied, 1948, 333 U.S. 827, 68 S.Ct. 454, 92 L.Ed. 1113; Duke v. United States, 5 Cir., 1956, 233 F.2d 897, 901; Marino v. United States, 9 Cir., 1937, 91 F.2d 691, 696, 113 A.L.R. 975. That a defendant was aware that he was not alone in plotting with common conspirators to violate the law is sufficient to raise the necessary inference that he had joined in an overall agreement. Blumenthal v. United States, supra, 332 U.S. at page 555 note 14, 68 S.Ct. at page 255; Poliafico v. United States, 6 Cir., 1956, 237 F.2d 97, 104; United States v. Ganey, 2 Cir., 1951, 187 F.2d 541, 543. In the light of these principles we turn to an analysis of the parts played by appellants Ribero and Quinn in the sordid story unveiled by the prosecution of the case.

The central figure in the criminal activities in which these appellants were involved was one Alfred Graham, who went around burglarizing narcotics from drug stores and dispensing them in violation of federal law. Graham was named as a co-conspirator but was not indicted. He did not peddle the narcotics himself. He found others not only to do that for him, but also to sell narcotics taken from other drug stores by other thieves. And he unlawfully transferred narcotics to his peddlers and friends who were users.

The evidence showed the following to have occurred during the period of the alleged conspiracy, February through August, 1958. February–May: Al Graham and Tony Grech burglarized three drug stores in San Francisco, assisted on one occasion by Robert McClure. Graham and McClure took some of the burglarized narcotics to Louis Scurini, who, with knowledge of the unlawfulness of Graham's possession agreed to sell $150.00 worth of the stuff. Subsequently, Tony Grech obtained more narcotics from a drug store. He informed Graham of this and told Graham that he should get the narcotics from Al Patron. Graham did so. Grech's brother, Jerry, participated in this incident. Tony and

Jerry Grech also successfully solicited Graham's aid in selling narcotics which Jerry had taken from a drug store. Graham brought these narcotics to Roy Daily to sell and told Daily how he, Graham, had acquired them. While these things were happening, appellant Ribero, accompanied by Scurini, received a "fix" from Graham at the latter's home. Graham told Ribero and Scurini that the narcotics had been burglarized from a drug store. Once in May, appellant Ribero, Tony Grech, Patron, and Nancy Francis took dope together at Patron's home.

June–August: During this period Scurini thrice obtained burglarized narcotics from Graham. Daily did the same thing twice, receiving narcotics either personally from Graham or through Graham's direction. Appellant Ribero continued using narcotics which had been stolen by Graham. Twice he personally used narcotics at Patron's house, once in the company of Tony Grech, who supplied the drugs used. Once, perhaps twice, Ribero obtained narcotics from David Hannah, another of Graham's peddlers. Ribero on one occasion in his own home took narcotics obtained from Tony Grech. The evidence showed that appellant Ribero had known Tony Grech for about five years prior to 1958.

Appellant Quinn is connected with the alleged conspiracy for the first time in August, 1958. On one occasion he agreed to sell burglarized narcotics for Graham and took $150.00 worth. On a second occasion, Quinn called at Graham's home for narcotics and was directed by Graham to obtain them from Hannah. Quinn did so, delivering some of the narcotics to Graham.

We think that the government introduced sufficient evidence to connect appellant Ribero with the single, encompassing conspiracy alleged in the indictment. Ribero was shown to have received narcotics from Graham, from Tony Grech, the conspirator most closely connected with Graham, and from David Hannah, who also sold for Graham, and to have dispensed narcotics to Nancy Francis, an unindicted co-conspirator. Ribero took narcotics in Grech's company on one occasion and more than once indulged his addiction in the company of Al Patron, who, the evidence indicated, was involved to some extent in the overall conspiracy. Ribero's transactions with these individuals create an inference of great strength to the effect that he, Ribero, knew that the narcotics he had received and dispensed were but a small part of the total amount of narcotics which his suppliers were distributing through concerted efforts. Consequently, we think the jury might well have concluded as it did that Ribero knew he was not alone in his dealings with Graham and Grech, that he possessed some knowledge of the breadth and scope of the conspiracy. Such knowledge together with his acts in furtherance of the unlawful scheme—he repeatedly received illegally dispensed narcotics and once was himself an unlawful dispenser—justified Ribero's conviction. As to him the judgment of the District Court is affirmed.

Whether appellant Quinn was connected with a single, overall conspiracy must now be considered. Quinn dealt only with Graham and Hannah. Quinn was clearly part of a conspiracy involving Graham and Hannah, but there is no evidence to link him to any of the other alleged conspirators or to indicate that he knew of their existence.[1] True, Quinn was told that Graham burglarized drug stores to obtain the narcotics which Quinn was given to sell, but no testimony indicated that Quinn was aware that others were in the plot, that is, in addition to Graham and Hannah. In other words there is a complete lack of evidence tending to show that Quinn knew that he and Graham and Hannah

1. The government did show that appellant Quinn had met Grace Stoner, an alleged conspirator, during one of his visits with Graham, but the mere fact of this meeting seems insufficient evidence from which to draw the inference that Quinn knew that Stoner, who was Graham's girl friend, was part of a conspiracy bigger than Quinn, Graham and Hannah.

were not alone in unlawfully dispensing narcotics. We do not think that a single conspiracy involving Quinn and all the other indicted conspirators was made out by the government's proof. As far as Quinn was concerned, there was one conspiracy involving himself, Graham and Hannah. That there was another, overall conspiracy does not seem to have been known to him, or if he was aware of it, the government failed to show his knowledge at the trial.

■ Sixteen persons were indicted in this case and at least three separate conspiracies were proved.[2] In consequence, a prejudicial burden was placed on the defense of appellant Quinn "not only in preparation for trial, but also in looking out for and securing safeguard against evidence affecting other defendants, to prevent its transference as 'harmless error' or by psychological effect, in spite of instructions for keeping separate transactions separate." Kotteakos v. United States, supra, 328 U.S. at page 767, 66 S.Ct. at page 1249. We hold pursuant to Kotteakos; Canella v. United States, 9 Cir., 1946, 157 F.2d 470, 477–478; and Brooks v. United States, 5 Cir., 1947, 164 F.2d 142, that as to appellant Quinn, the judgment of the lower court must be reversed.

Reversed as to Quinn; affirmed as to Ribero.

2. In addition to the overall conspiracy and the plot involving Graham, Quinn and Hannah, the evidence indicated that defendant Barulich was neither a part of the overall scheme nor of the conspiracy to which appellant Quinn was joined. The jury found Barulich not guilty of the conspiracy charged in the indictment.