**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Lloyd Allen MICKENS, Defendant-Appellant.**

**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Tommy J. WAGNER, Defendant-Appellant.**

**HERNANDEZ CASES.**

**Group IV Appeals.**

**Nos. 26560, 26561.**

United States Court of Appeals, Ninth Circuit.

Feb. 16, 1973.
Rehearing Denied Oct. 18, 1973.

Certiorari Denied May 13, 1974.
See 94 S.Ct. 2398.

Jonathan K. Golden (argued), Burton Marks, Beverly Hills, Cal., William J. Zumwalt, San Diego, Cal., for defendants-appellants.

James W. Meyers, Asst. U. S. Atty. (argued), Phillip W. Johnson, Sp. Asst.

Atty. Gen., Harry D. Steward, U. S. Atty., San Diego, Cal., for plaintiff-appellee.

Before HAMLEY and CHOY, Circuit Judges, and SCHNACKE, District Judge.*

HAMLEY, Circuit Judge:

This is the fourth and final opinion involving the so-called Hernandez narcotics conspiracy. In United States v. Baxter, et al., 492 F.2d 150 (9th Cir. 1973), filed today, which pertains to the Hernandez Group I appeals, we have stated in some detail the general background of this litigation. Two other opinions, also filed today, involved the Hernandez Group II appeals, United States v. Murray, et al., 492 F.2d 178 (9th Cir. 1973), and the Hernandez Group III appeals, United States v. Valdivia, et al., 492 F.2d 199 (9th Cir. 1973).

Those three appeals arose from three separate trials involving defendants charged under a single indictment. The appeals now before us arise from a fourth trial under a second indictment pertaining to the same general Hernandez narcotics conspiracy.

Count one of the indictment here in question charged that, beginning at a date to the grand jury unknown and continuing to on or about February 5, 1969, Lloyd Allen Mickens, Tommy J. Wagner, Frank Lloyd Wilson, Robbie Edwina Berry, Robert Hernandez and Helen Hernandez, together with unindicted co-conspirators Donald Lannom, Roy Cohn and Richard Wright, and divers other persons to the grand jury unknown, conspired to violate 21 U.S.C. § 174, by knowingly importing heroin and cocaine into the United States from Mexico, and by thereafter selling, concealing, and facilitating the transportation of such drugs. Count two charged that on or about November 12, 1968, these six defendants knowingly caused the use of telephone, wire, and other means of communication facilities in San Diego County, in facilitating the commission of, and attempting to commit, the importation, concealment, and sale of hereoin and cocaine, the penalty for which offense is provided in 21 U.S.C. § 174, in violation of 18 U.S.C. § 1403(a).[1]

The two Hernandez defendants who resided in Mexico were not apprehended. The charges against Wilson and Berry were severed for separate trial. The trial proceeded against Mickens and Wagner. The trial court dismissed the second count as to both. The jury found both guilty as charged on the conspiracy count. The trial court sentenced both Mickens and Wagner to eight years imprisonment. Each appealed and we consolidated their appeals for argument and disposition.

I. *Points Discussed in Other Hernandez Opinions*

In these Group IV appeals, defendants argue that the documents taken from the Hernandez home in Mexico were inadmissible evidence for various reasons. Similar contentions were fully discussed, and rejected, in section II of our opinion in the Group I appeals. For the reasons stated in the Group I opinion, we hold these contentions to be without merit. Defendant Wagner also adopts the arguments made on appeal on behalf of all other appellants in the Group I, II and III appeals insofar as the conspiracy convictions were concerned. As indicated by our opinions filed today in those appeals, all such arguments have been rejected.

II. *Sufficiency of Evidence to Prove Conspiracy Count*

■ Defendants contend that the evidence was insufficient to support the jury verdict convicting them on the conspiracy count.

At the outset of section I of our opinion in the Group I appeals, United States

---

* The Honorable Robert H. Schnacke, United States District Judge for the Northern District of California, sitting by designation.

1. *See* note 1, United States v. Baxter, et al., 492 F.2d 178 (9th Cir. 1973) regarding the repeal of 18 U.S.C. § 1403 and 21 U.S.C. § 174, with savings clause.

v. Baxter, et al., 492 F.2d 150 (9th Cir. 1973), filed today, we discussed the general considerations to be borne in mind in dealing with challenges to the sufficiency of the evidence to support conspiracy charges. What we there said is equally applicable here and is to be considered as introductory to the following review of the evidence pertaining to Mickens and Wagner.

Under the evidence considered in the light most favorable to the Government, the jury could reasonably have found the background facts pertaining to the Hernandez narcotics operation to be substantially as described in our opinion in the Group I appeals. With particular reference to defendants Mickens and Wagner, the jury could reasonably have found the facts to be as set out below.

One of the pages in the Hernandez "customer book" was headed "Tom— Robert Jones." The customer was "Tom." "Robert Jones" was the name used by this customer in sending a cashier's check or money order. This person could be contacted at telephone number 296–5906. The page also included two other telephone numbers, 294–7359 and 291–6842. The only typing on this page reads as follows:

"Tom—Robert Jones
"294–7359 IYE–DMOY"

Telephone number 294–7359 was the number of Robbie Berry, residing at Apartment 14, 3959 Gibraltar Avenue, Los Angeles. Mickens also had an apartment at 3959 Gibraltar. In early October, 1968, Mickens asked Robbie Berry if he could use her telephone for incoming calls. She granted his request. He received these calls under the name of "Tom," and was the only one who used that telephone under the name of "Tom." Mickens would utilize a notebook as he talked on the telephone during these calls, jotting down whatever he wished to record concerning the call.

Mickens received three "Tom" calls on this telephone in October. The first of thse was in mid-October, the second about the third week of October, and the third about October 30th. The Hernandez "customer book" shows that "Tom" was debited for seven ounces of heroin on October 19th and eight ounces on October 30th, for a total sales price of $4,875. Mickens was arrested on December 8, 1968. At the location of his arrest, a Customs agent found a notebook containing various telephone numbers, including 294–7359.

On January 22, 1969, Mickens knocked on Robbie Berry's apartment door. Bobby Sanders, a visitor, opened the door and told Mickens Miss Berry was not there. Mickens pushed Sanders out of the way and walked into the bedroom, where he found Miss Berry. Mickens swore at her and said:

"You turned me over to the people, the customs agency and the police, and for something that I didn't have anything to do with and you will be turned over to the syndicate!"

Miss Berry told Mickens that she was going to call the police. However, he pushed and slapped her, and took the telephone away from her.

There was other testimony connecting Mickens to telephone number 291–6778, which was that of Mrs. Mickens prior to her marriage. Three long-distance telephone calls were made from this number to the Hernandez residence in Tijuana, Mexico, on November 25, 1968. This Hernandez number was at that time being used by Richard Wright in his narcotics work for the Hernandezes. The Hernandez "customer book" shows that a debit for five ounces of narcotics was entered for "Tom" on November 23rd and that the sum of two thousand one hundred dollars was credited to "Tom's" account on November 28.

One of the telephone numbers listed on the "Tom—Robert Jones" page of the "customer book" was 296–5906. This was the number of Frank and Constance Wilson, Apartment 19, 3919 Ursula, Los Angeles. In August or September, 1968, codefendant Wagner obtained Mrs. Wilson's permission to receive calls over this

telephone. Upon at least four occasions calls came in for "Tom," and Mrs. Wilson would contact Wagner and have him come to the telephone.

Wagner had his own telephone at the time, located in his apartment, which was Apartment 18 at 3919 Ursula. Wagner was the apartment house manager. Mrs. Wilson came home on one occasion and found her telephone in Wagner's apartment, the long extension cord passing through the entrance of both apartments. Wagner later admitted to Mrs. Wilson that he had made a call to Tijuana over her telephone, and he offered to pay the rent on the Wilson apartment. Mickens would sometimes visit Wagner's apartment.

The "Tom—Robert Jones" page in the "customer book" also contained the telephone number 291–6842, which had been lined out. This number was listed to "Robt Wagner," 3919 Ursula, Apartment 18, Los Angeles. In late November, this number was changed to 291–4101. Records for these numbers show a total of thirty-one long distance calls to 386–2075 in Tijuana. This was one of the two telephones utilized by Richard Wright in his Hernandez narcotics work.

Two of the Tijuana calls occurred on November 28, and another on November 29. "Tom" was debited in the "customer book" with seven ounces of narcotics on November 29. The next Tijuana call from the "Robt Wagner" telephone occurred December 2, and the next "Tom" entry in the "customer book" is December 3, for seven ounces of narcotics.

Wagner was arrested on April 8, 1969. At this time there was discovered in his apartment money order receipts showing that "Robert Jones" sent a total of four thousand nine hundred dollars to Robert Hernandez in Tijuana. Two of these show a total of three thousand three hundred dollars sent on November 12, 1968. The "Tom—Robert Jones" page in the "customer book" shows that this payment was credited to "Tom's" account on November 13, involving a November 11 purchase of ten ounces of heroin for three thousand two hundred fifty dollars. There was also found in the Wagner apartment at this time, a bag containing rubber balloons. There was a small amount of heroin residue upon the outer surface of some of the balloons. Rubber balloons are utilized for the storage and sale of heroin and cocaine.

By use of expert testimony and handwriting exemplars by Wagner, it was established that, using the name "Robert Jones," he applied for money orders sent to Robert Hernandez, in Tijuana, as follows:

| | |
|---|---|
| $1,625 | March 2, 1968 |
| $1,000 | March 17, 1968 |
| $1,625 | June 18, 1968 |

The background evidence pertaining to the Hernandez narcotics conspiracy was essentially the same in all four of the trials which resulted in the four appeals being disposed of today. Having in view this background evidence, as summarized at the outset of our opinion in the Group I appeals, and that which relates specifically to Mickens and Wagner as reviewed above, we believe the jury could reasonably find that Mickens and Wagner must have known that other retailers, in addition to themselves, were involved with the Hernandez organization in a broad project for the smuggling, distribution and retail sale of narcotics. As we have likewise concluded in the Group I, II and III appeals with respect to other defendants, the jury could also reasonably find that Mickens and Wagner must have realized that the benefits they and other retailers derived from the operation were dependent upon their mutual participation therein.

These basic findings, as we have said in the other Hernandez opinions being filed today, are ample to support the jury determination that Mickens and Wagner, in effect, agreed to participate in the single, over-all scheme, and did participate therein. *See Blumenthal v. United States*, 332 U.S. 539, 557, 558, 68 S.Ct. 248, 92 L.Ed. 154 (1947); *United States v. Friedman*, 445 F.2d 1076, 1080 (9th

Cir. 1971); Daily v. United States, 282 F.2d 818, 820 (9th Cir. 1960).

### III. Search and Seizure at Wagner's Apartment

Defendant Wagner asserts that the search of his apartment following his arrest there on April 8, 1969, violated his rights under the Fourth Amendment. His motions to suppress money orders, rubber balloons and telephone bills seized during the search were denied.

In section V of our opinion in the Group I appeals, United States v. Baxter, et al., 492 F.2d 150 (9th Cir. 1973), filed today, we discussed the rules governing searches and seizures occurring prior to the decision in Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). The circumstances surrounding the arrest of Wagner and the search of his apartment are not legally distinguishable from those involved in the arrests and searches of the Group I defendants. We therefore conclude that the search of Wagner's apartment and the seizure of the evidence noted above were lawful, and such evidence was properly received at the trial.

### IV. Prejudicial Effect of Testimony concerning One Grain of Heroin Found at Wagner's Apartment

Rosalind Ereneta, chief chemist of the San Diego section of the Los Angeles Customs laboratory, testified that the Government's exhibit 22 is a bag which contained numerous colored balloons. She further testified that on some of these balloons there was a powdery substance which, upon microscopic examination, was found to be heroin hydrochloride. The amount was less than one grain, which is equivalent to a tenth of a gram. The small amount of powder was consumed in the analysis.

Wagner argues that the relevance, materiality and probative value of this "almost indiscernible" amount of heroin was so infinitesimal with regard to the conspiracy and substantive counts of the indictment that it was completely outweighed by the prejudicial effect of such evidence. Wagner thus invokes the familiar rule that it is error to receive, over objection, evidence the relevance of which is slight as compared to its prejudicial character. See Courtney v. United States, 390 F.2d 521, 528 (9th Cir. 1968). In asserting the lack of probative value of this testimony, Wagner refers to a California decision, People v. Fein, 4 Cal.3d 747, 94 Cal.Rptr. 607, 484 P.2d 583 (1971), for the proposition that evidence of useless traces of residue of narcotic substances does not constitute sufficient evidence to sustain a conviction for possesssion of narcotics.

We need not decide whether the *Fein* decision states the rule applicable in federal courts, since Wagner was not charged with possession of narcotics. Under count one of the indictment he was charged with conspiring to smuggle narcotics into the United States for distribution and retail sale. Customs Special Agent Melvin Paulson testified that rubber balloons are used for the storage of heroin and cocaine for sales purposes. The testimony that a Government chemist found heroin residue on balloons found in Wagner's apartment was obviously relevant and had substantial probative value in proving the conspiracy charge. The trial court did not err in admitting this testimony.[2]

The judgments of conviction and sentences in these Group IV appeals are affirmed.

---

2. We have elected to deal with this contention on the merits notwithstanding the fact that counsel for Wagner waited until the chemist had completed her testimony before making any objection, and then moved to strike her testimony on the sole ground that it constituted prejudicial hearsay.