**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Frank AMATO, Samuel Salvatore Brunello, Donald Lambert, aka Louis Lamberti, Defendants-Appellants.**

No. 73–2069.

United States Court of Appeals,
Fifth Circuit.

June 7, 1974.

Rehearing and Rehearing En Banc
Denied July 12, 1974.

---

Harvey I. Silverman, Hallandale, Fla. (Court-appointed), for Lambert.

Arthur W. Tifford, Miami, Fla. (Court-appointed), for Amato.

Neale J. Poller, Miami Beach, Fla. (Court-appointed), for Brunello.

Robert W. Rust, U. S. Atty., Miami, Fla., Marshall Tamor Golding, Atty., Dept. of Justice, Washington, D. C., for plaintiff-appellee.

Before BROWN, Chief Judge, and TUTTLE and SIMPSON, Circuit Judges.

TUTTLE, Circuit Judge:

Defendants-appellants, Amato, Lambert, and Brunello, were convicted by a jury under the Hobbs Act, 18 U.S.C.A. § 1951[1] for conspiring to obstruct interstate commerce by extortion achieved by physical violence and threats of violence. On appeal appellants allege numerous errors by the district court. However, we find meritorious only the claim of insufficiency of evidence.[2]

Appellants were indicted with five other co-defendants. The indictment charged a conspiracy continuing over a period of one year, November 1, 1970 through November 1, 1971, to extort money, goods, and services from Sheldon, Frederick, and Selma Arthur and a family corporation, "Oliver's," which was a restaurant and cocktail lounge. The government alleged that the evidence demonstrated that the defendants first induced fear in the Arthurs by threatened and actual violence, and then attempted to obtain money and employment for themselves and others at Oliver's. While unsuccessful, the government argues that the defendants did obtain food, drink, and services without payment. Three of the eight co-defendants were granted judgments of acquittal by the district court. Two were found innocent by the jury. Appellants, Amato, Lambert, and Brunello, were found guilty.

The Hobbs Act applies to one who ". . . affects commerce or the movement of any article or commodity in commerce, by . . . extortion or attempts or conspire so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section . . . ."[3] Appellants assert, individually, that there was insufficient proof on the elements necessary for conviction, specifically: (1) Failure to show an effect on interstate commerce; (2) Failure to prove formation of a conspiracy; (3) Failure to demonstrate each appellant's intent to join the conspiracy; (4) Failure to prove a reasonable fear on the part of the victims.

## INTERSTATE COMMERCE

The essence of appellants' interstate commerce argument is that the government's proof only discloses *intrastate*

1. This provision provides:
   "(a) Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined not more than $10,000 or imprisoned not more than twenty years, or both.
   "(b) As used in this section—
   "(2) The term 'extortion' means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right.
   "(3) The term 'commerce' means commerce within the District of Columbia, or any Territory or Possession of the United States; all commerce between any point in a State, Territory, Possession, or the District of Columbia and any point outside thereof; all commerce between points within the same State through any place outside such State; and all other commerce over which the United States has jurisdiction."

2. Among other errors urged were: (a) Denial of a fair trial by the conduct and hysterics of two prosecution witnesses; (b) Denial of motions for severance; (c) Admission of declarations by co-conspirators contrary to United States v. Puco, 476 F.2d 1099 (2d Cir. 1973), cert. denied, 414 U.S. 844, 94 S. Ct. 1067, 38 L.Ed.2d 82 (1973); (d) The jury instructions on intent; (e) Denial of cross-examination; (f) Designation of an improper time period for the conspiracy in the indictment; and (g) Discriminatory selection of grand and petit juries.

3. *See* the text of the Hobbs Act, 18 U.S.C.A. § 1951, quoted in note 1, *supra.*

sales by wholesale liquor and meat suppliers, who purchased their goods from out-of-state, to Oliver's. Appellants contend that the flow of the interstate goods stopped with the supplier, therefore, the interruption eliminates the interstate nature and effect of any intrastate sale between Oliver's and the supplier's. Secondarily, appellants state that there is no evidence that the flow of goods to the supplier ceased or slowed down, affecting commerce, as a result of the conspiracy.[4]

▋▋ This Court described the manner in which the interstate commerce requirement of the Hobbs Act had to be satisfied in United States v. Nakaladski, 481 F.2d 289, 298–299 (5th Cir. 1973):

". . . Under the Hobbs Act it is not necessary that the subject of the extortion constitute interstate commerce, or that the purpose of the extortion be to affect interstate commerce. All that is required is that trade be affected by extortion 'in any way or degree,' Carbo v. United States, 9 Cir. 1963, 314 F.2d 718, 732; see United States v. Addonizio, supra, 451 F.2d [49] at 77, and that the victim have been induced to part with property through the use of fear." Id. at 298.

It is clear that:

"The impact of extortion need affect interstate commerce only in a minimal degree, United States v. Hyde, 5 Cir., 1971, 448 F.2d 815, cert. denied, 404 U.S. 1058, 92 S.Ct. 736, 30 L.Ed.2d 745." United States v. Nadaline, 471 F.2d 340, 343 (5th Cir. 1973).

At trial the government called two witnesses who testified that their employers, one a liquor, the other a meat supplier, purchased their products from out-of-state sources. The government then offered documentary proof, i. e., invoices, that Oliver's purchased liquor and meat products from these suppliers. Finally, the government demonstrated that Oliver's was closed for a month because of the action and coercion of the conspirators.[5] From these facts, the court and the jury could reasonably infer an effect on interstate commerce.

The intermediate stop of the goods shipped interstate with the middle man supplier before receipt by Oliver's, does not make the effect on interstate commerce too attenuated. United States v. Pranno, 385 F.2d 387, 389 (7th Cir. 1967); Battaglia v. United States, 383 F.2d 303, 305 (9th Cir. 1967). Likewise, the evidence of the closing of Oliver's as a consequence of the conspiracy furnishes sufficient inferences of the reduction of sales from suppliers who purchased out-of-state products. United States v. DeMasi, 445 F.2d 251, 257 (2d Cir. 1971);[6] United States v. Pranno, supra, 385 F.2d at 389.

## APPELLANT BRUNELLO

While inadequate proof of the effect on interstate commerce would have invalidated all convictions, the alleged in-

---

4. See note 5, infra.

5. Two of the factors causing the closing of Oliver's were the destruction of the furnishings and the beating of Frederick Arthur allegedly inflicted by defendant Peter Allen and two unidentified men on September 28, 1971. However, defendant Allen was granted an acquittal by the court because of the government's failure to comply with the Jencks Act. Because of the acquittal, there might be some question of the competence of this evidence to support a conclusion of an effect on interstate commerce if it were the sole cause of the closing of Oliver's. However, the evidence revealing that Sheldon Arthur felt compelled to ask Lambert and Amato for permission to reopen Oliver's was sufficient for the jury to infer that other factors, in addition to defendant Peter Allen's alleged actions, forced the closing of Oliver's.

6. In DeMasi, the court stated:
"With reference to the argument that the Government failed to prove an effect on interstate commerce, we note only that the Club purchased its meat in Connecticut and its liquor both nationally and internationally, and that when the Club closed these deliveries were stopped. The requisite effect was proven." Id.

sufficiency of proof on the other elements of the conspiracy charge have had to be examined individually, as to each appellant. Having carefully reviewed the record we reverse the conviction of appellant Brunello, and affirm the convictions of appellants Amato and Lambert.

■ Brunello moved for a judgment of acquittal at several points within the trial and at the close of evidence. In addition, he filed a motion notwithstanding the verdict pursuant to Fed.R.Crim. P. 29(c). The district court denied these motions. This Court has stated most recently in United States v. Jeffords, 491 F.2d 90 (5th Cir. 1974):

"The test in a criminal case to determine whether there is sufficient evidence to submit the case to the jury is:

"On a motion for judgment of acquittal, the test is whether, taking the view most favorable to the Government, a reasonably-minded jury could accept the relevant evidence as adequate and sufficient to support the conclusion of the defendant's guilt beyond a reasonable doubt. Sanders v. United States, 5 Cir., 1969, 416 F.2d 194, 196; Jones v. United States, 5 Cir., 1968, 391 F.2d 273, 274; Weaver v. United States, 5 Cir., 1967, 374 F.2d 878, 881.

"United States v. Warner, 5 Cir. 1971, 441 F.2d 821, 825, cert. denied, 404 U.S. 829, 92 S.Ct. 65, 30 L.Ed.2d 58 (1971). *See also* Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1941); United States v. Stephenson, 5 Cir., 1973, 474 F.2d 1353." *Id.* at 91.

The government's case against Brunello is grounded on his involvement with one of the other appellants, Amato, and the Arthurs in two incidents occurring on *one* night, May 28, during the one year conspiracy. The first incident was Brunello's participation in an altercation at Oliver's. He was accompanying appellant Amato, who began the fight. Although the testimony is conflicting on whether Brunello was aggressively aiding Amato or attempting to separate the participants and terminate the fracas, we must take the view most favorable to the government—that Brunello was an active aggressor. During the scuffle, Selma Arthur testified that Brunello warned her that if the police were called that next time both her sons would be killed. For that reason she later testified that she told the police that Brunello was not one of the perpetrators of the altercation. Later that evening, Selma Arthur followed Amato and Brunello to the Gold Doubloon, a neighboring cocktail lounge, to plead that no further injuries be inflicted on her sons. Sheldon Arthur then appeared. He had an automatic hand gun in the waist band of his trousers. Brunello yoked Sheldon around the neck, grabbed the pistol from him, and threatened him. At the request of Amato, Brunello then gave the pistol to Selma Arthur, and the Arthurs left.

■ No formal agreement is necessary to establish a conspiracy, whose existence often is proved by inferences from the actions of the actors or circumstantial evidence of a scheme. United States v. Nadaline, *supra,* 471 F.2d at 344; United States v. Anderson, 352 F. 2d 500 (6th Cir. 1965). The question arises, however, whether this single night's involvement is sufficient to prove Brunello's *intent* to join, or knowledge of, the conspiracy. The proof on conspiracy charges, in general, requires:[7]

---

7. *See* Roberts v. United States, 416 F.2d 1216, 1221 (5th Cir. 1969) ("In sum, we are left with an abiding conviction that the jury's verdict of guilty as to Bookout is based upon suspicion and surmise only. She associated with the wrong people and was convicted because of guilt by association only."); Wood v. United States, 283 F.2d 4, 6 (5th Cir. 1960) ("This record demonstrates that these appellants spent much of their time during the period of the alleged conspiracy in company with proven bootleggers. This fact, coupled with their game of 'cops and robbers' in and around the area in

"In order to establish a person as a participant in a conspiracy, the evidence must show that the accused intended to join and cooperate in the illegal venture. Knowledge that a conspiracy exists is a minimum requirement for establishing the requisite intent. 'Furthermore, to establish the intent, the evidence of knowledge must be clear, not equivocal.' Direct Sales Co. v. United States, 319 U.S. 703, 711, 63 S.Ct. 1265, 1269, 87 L.Ed. 1674. *See* Daily v. United States, 9 Cir., 282 F.2d 818, 821–822. Association with an alleged co-conspirator may raise a strong suspicion of knowledge and intent, but this is not the only reasonable inference which may be drawn from such conduct." Miller v. United States, 382 F.2d 583, 587 (9th Cir. 1967).

█ Selma Arthur testified that she had never seen Brunello before or after May 28th. There was no other evidence even portraying Brunello as an associate or close companion of the other conspirators. Both Selma and Fred Arthur testified that Brunello had never solicited free liquor or food, or sought credit, money or employment. In fact, the government has not shown that Brunello had any interest at all in the outcome of the conspiracy. United States v. Noah, 475 F.2d 688, 697 (9th Cir. 1973). Although any violence perpetrated by Brunello cannot be condoned and is reprehensible, the record is devoid of any element of intent to join in an extortion conspiracy in violation of the Hobbs Act. *See* United States v. Nedley, 255 F.2d 350, 357–358 (3rd Cir. 1958). In sum, we find that as a matter of law the evidence against Brunello on the issue of intent to join, or even knowledge of, the conspiracy was insufficient to submit the case to the jury.

which several stills were later found creates a strong suspicion that they had more than a passing interest in the stills and their product. Mere suspicion is, of course, not sufficient to warrant the submission of a criminal case to a jury.").

The Judgments of Conviction of Amato and Lambert are affirmed.

The Judgment of Conviction and sentence of Brunello is reversed and the case is remanded to the trial court for the entry of a Judgment of Acquittal as to him.