In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-06-048 CR


____________________



DOUGLAS ARLAND STREBY, Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the 284th District Court 


Montgomery County, Texas


Trial Cause No. 05-05-04034-CR






MEMORANDUM OPINION


 A jury convicted Douglas Arland Streby of possession of a Penalty Group 1 controlled
substance (methamphetamine) in an amount of less than one gram. The offense is designated
as a state jail felony. See Tex. Health & Safety Code Ann. § 481.115(a), (b) (Vernon
2003). The trial court elected to assess punishment at confinement in the Montgomery
County Jail for a period of one hundred eighty days. See Tex. Pen. Code Ann. § 12.44(a)
(Vernon Supp. 2006). Streby raises the following four issues in his direct appeal to this
Court: 

 1. The Trial Court erred in failing to give a 38.23 charge to the Jury.


 2. The Trial Court erred in failing to grant an instructed verdict.


 3. There are no "affirmative links" connecting the Defendant to the contraband.


 4. There is insufficient evidence to show the Defendant's consent to search.


 At the outset, we combine issues two and three for discussion as they essentially raise
a single complaint; that the evidence is legally insufficient to support the jury's "guilty"
verdict. See Evans v. State, 202 S.W.3d 158, 161-62 n.9 (Tex. Crim. App. 2006)
("affirmative links" rule is not an independent test for legal sufficiency, but merely a
shorthand catch-phrase for the myriad variety of circumstantial evidence that may establish
knowing "possession" or "control, management, or care" of contraband); McDuff v. State,
939 S.W.2d 607, 613 (Tex. Crim. App. 1997) (a complaint about overruling a
directed/instructed verdict is in actuality an attack upon the sufficiency of evidence to sustain
the conviction). 

 The record reflects that on March 19, 2005, shortly after midnight, Deputy Gregory
James Lagoy of the Montgomery County Constable's Office, Precinct 4, was on patrol in
response to a complaint from a resident concerning "speeders and prowlers" in the
neighborhood. Lagoy was riding with another deputy, Kevin Daniel Payne, in a marked
patrol unit. An undercover unit alerted the deputies to a pickup truck "spotlighting" houses
on Forest Lane Circle. Lagoy and Payne began to follow a vehicle matching the description
and observed the driver twice fail to activate his turn-signal while he made turns at
intersections. Lagoy activated the emergency lights and stopped the vehicle because of the
traffic violations. The pickup truck was occupied by three individuals - - Streby was the
driver, and Marilyn Allman and Bryan Capps were the passengers. All three people were
sitting in the front seat of the extended cab pickup truck. 

 Lagoy had Streby exit the vehicle and as he was being identified, Streby stated that
the pickup truck had been rented by him because his car had been "totaled." A rental receipt
admitted into evidence at trial confirmed that Streby rented the truck on March 14, 2005. At
some point, Lagoy noticed that the back-seat area of the vehicle "was full of stuff[,] . . . full
of bags." Lagoy asked Streby why he was in the area and Streby replied he was looking for
a friend, but forgot where the friend's house was located. Lagoy testified that Streby's
response made him nervous, and the deputy suspected something was going on. When
Deputy Payne observed some furtive movements inside the vehicle, Allman and Capps were
made to exit the truck for officer safety purposes. (1) Lagoy was a canine officer and had his
trained drug-sniffing canine partner, Hank, with him in the unit. Because of his suspicions,
Lagoy asked Streby for permission to search the truck. It is contested, as evidenced by issue
four, whether Streby voluntarily consented to the search. The record does indicate that prior
to any search of the truck, Lagoy removed Hank from the patrol unit and ran the dog twice
around the vehicle. During his two passes, Hank alerted three times -- twice on the
passenger's door and once on the driver's door. Lagoy returned Hank to the patrol unit, and
then proceeded to search the interior of the pickup truck. 

 Lagoy's search of the pickup truck turned up two tin containers, one found "in the
driver's door," and the other found "in a black case in the back of the truck, which was still
inside the truck." Both of the tin containers field-tested positive for methamphetamine. 
However, at trial, the chemist who examined the tins at the Texas Department of Public
Safety crime laboratory facility in Houston testified that only one of the tin containers, State's
Exhibit 3, contained a measurable amount of material for testing purposes. The other tin
container, State's Exhibit 2, was "clean," so there were no tests done on it. Testing on
State's Exhibit 3 confirmed the presence of methamphetamine in a "trace amount." Deputy
Lagoy testified that he mistakenly failed to designate in his offense report which tin container
was found in the driver's door and which one was found inside the black "case" or "bag,"
and the record is otherwise silent as to each tin's specific location. The record indicates that
at some point the deputies discovered that Capps was the subject of an outstanding felony
warrant. A search incident to Capps' arrest turned up marijuana in one of his pockets. Also
at this time, it was discovered that Allman's purse contained methamphetamine and drug
paraphernalia, and she was also placed under arrest. Lagoy testified that at some point he
was made aware that both Capps and Allman had prior felony convictions. 

 Videotape evidence, State's Exhibit 5, was played for the jury. Although the quality
of the audio at times is very poor, Streby is heard referring to items inside the truck as
belonging to him on two occasions. The first is in response to a question from Deputy Lagoy
inquiring if Streby had any guns or knives in the vehicle, to which Streby's reply included
the words, ". . . stuff in the bag with my clothes." On the second occasion, Streby volunteers
the information that his ex-wife was in the hospital and that he was supposed to spend the
night. Streby is then heard to say that he was given "two hours to get everything out," and
then the partial sentence is heard, ". . . threw it all in the truck and had to haul butt." After
the State rested its case, Streby proceeded to also rest, calling no witnesses in his behalf. 

 When performing a legal sufficiency review, an appellate court must view all of the
record evidence in the light most favorable to the prosecution to determine if any rational
trier of fact could have found the essential elements of the offense beyond a reasonable
doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Evans,
202 S.W.3d at 161. "Possession" is defined as actual care, custody, control, or management. 
Tex. Health & Safety Code Ann. § 481.002(38) (Vernon Supp. 2006). "To prove
unlawful possession of a controlled substance, the State must first prove appellant exercised
actual care, control and management over the contraband and second, that appellant had
knowledge the substance in his possession was contraband." Nixon v. State, 928 S.W.2d 212,
215 (Tex. App.--Beaumont 1996, no pet.) (citing King v. State, 895 S.W.2d 701, 703 (Tex.
Crim. App. 1995)). The State need not prove exclusive possession of the contraband, since
control over contraband may be jointly exercised by more than one person. McGoldrick v.
State, 682 S.W.2d 573, 578 (Tex. Crim. App. 1985). However, mere presence at a place
where narcotics or dangerous drugs are being used or possessed by others does not justify a
finding of joint possession. Id. 

 When an accused is not in exclusive possession of the location where contraband is
found, additional independent facts and circumstances must link (2) him to the contraband. See
Poindexter v. State, 153 S.W.3d 402, 406 (Tex. Crim. App. 2005); Nixon, 928 S.W.2d at 215. 
Such a link may be established through either direct or circumstantial evidence, and should
show that the accused's connection to the contraband was more than fortuitous. Poindexter,
153 S.W.3d at 405-06. A non-exclusive list of factors which may circumstantially establish
the legal sufficiency of the evidence to prove a knowing possession include:

 1. the defendant's presence when a search is conducted;

 2. whether the contraband was in plain view; 

 3. the defendant's proximity to and the accessibility of the contraband;

 4. whether the defendant was under the influence of narcotics when arrested;

 5. whether the defendant possessed other contraband or narcotics when arrested;

 6. whether the defendant made incriminating statements when arrested;

 7. whether the defendant attempted to flee; 

 8. whether the defendant made furtive gestures;

 9. whether there was an odor of contraband;

 10. whether other contraband or drug paraphernalia were present;

 11. whether the defendant owned or had the right to possess the place where the contraband was found;

 12. whether the place where the contraband was found was enclosed;

 13. whether the defendant was found with a large amount of cash; and 

 14. whether the conduct of the defendant indicated a consciousness of guilt.


See Evans, 202 S.W.3d at 162 n.12. "Circumstantial evidence" has been defined as "direct
proof of a secondary fact which, by logical inference, demonstrates the ultimate fact to be
proven." Taylor v. State, 684 S.W.2d 682, 684 (Tex. Crim. App. 1984); Watson v. State, 861
S.W.2d 410, 412 (Tex. App.--Beaumont 1993, pet. ref'd). Indeed, as the Evans Court noted,
"It is the logical force of the circumstantial evidence, not the number of links, that supports
a jury's verdict." Evans, 202 S.W.3d at 166.

 In the instant case, there are four factors linking Streby to the contraband at issue (1,
3, 11, and 12). However, the logical force of the totality of the evidence, direct and
circumstantial, coupled with reasonable inferences therefrom, point to Streby's knowing
possession of the methamphetamine in question. Streby admitted having rented the pickup
truck and was driving it when stopped by Deputy Lagoy. Therefore, Streby had the right to
be in possession of the truck at the time the contraband was found. Lagoy testified one of
the tin containers was found in the driver's door and the other was found in a black bag
located in the back-seat area of the extended cab truck. This indicates that prior to the stop
Streby was in close proximity to both tin containers, State's Exhibits 2 and 3, within the
enclosed cab of the pickup truck. Additionally, twice during his conversation with Deputy
Lagoy, Streby makes statements that strongly imply ownership of the bags and knowledge
of their contents - - once prior to Lagoy's decision to search the vehicle and once following
Lagoy's request to search the vehicle. Lastly, it was uncontroverted that both Allman and
Capps were each in possession of separate items of contraband at the scene of the stop, while
Streby was found not to be carrying contraband following the search of his person. This fact,
coupled with Streby's close proximity to the two tin containers in question, could allow a
factfinder to reasonably infer that the two tins belonged to Streby as his companions were
already in personal possession of drugs.

 When properly applied by a reviewing court to a legal sufficiency challenge, the
Jackson v. Virginia standard of review:

 [g]ives full play to the responsibility of the trier of fact fairly to resolve
conflicts in the testimony, to weigh the evidence, and to draw reasonable
inferences from basic facts to ultimate facts. Once a defendant has been found
guilty of the crime charged, the factfinder's role as weigher of the evidence is
preserved through a legal conclusion that upon judicial review all of the
evidence is to be considered in the light most favorable to the prosecution.[ (3)] 
The criterion thus impinges upon "jury" discretion only to the extent necessary
to guarantee the fundamental protection of due process of law. 


Jackson v. Virginia, 443 U.S. at 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (footnote omitted). Our
examination of all of the evidence, including reasonable inferences from said evidence, in
the light most favorable to the verdict leads us to conclude that a rational trier of fact could
have found that Streby was guilty of knowingly possessing the methamphetamine in question
beyond a reasonable doubt. Issues two and three are overruled.

 Under his first issue, Streby's entire argument consists of the following: 

 The Trial Court erred in failing to give a Texas Code of Criminal Procedure
article 38.23 charge to the Jury. Appellant's trial counsel asked the Court for
this charge and the Court denied it. . . . See "Exhibit A". The failure of the
Trial Court to give such a charge is reversible error. See Appling vs. State, 904
S.W.2d 912 (Tex. App. - Corpus Christi 1995, pet. ref'd).


The State replies that Streby had forfeited review of issue one because of inadequate briefing. 
We agree. Rule 38.1(h) of the Texas Rules of Appellate Procedure requires an appellant's
brief to "contain a clear and concise argument for the contentions made, with appropriate
citations to authorities and to the record." See Tex. R. App. P. 38.1(h). Aside from the
statutory provision itself, Streby's lone authority for his reversible error contention is Appling
v. State, 904 S.W.2d 912 (Tex. App.--Corpus Christi 1995, pet. ref'd). We find nothing in
Appling that involves the application of the jury instruction portion of article 38.23. The
defendant in Appling contended, inter alia, that his oral statements to the authorities, solicited
without benefit of Miranda (4) warnings, were not admissible during trial for impeachment
purposes because the statements were acquired in violation of article 38.23, the Texas
exclusionary rule. See Appling, 904 S.W.2d at 916-17. Additionally, Streby does not cite
to or discuss the seminal case on alleged jury-charge error, Almanza v. State, 686 S.W.2d 157
(Tex. Crim. App. 1984) (op. on reh'g), nor does he cite to or discuss any of its progeny. 
Therefore, by failing to provide any relevant authority and discussion with regard to the lack
of an article 38.23 jury instruction, we find Streby's first issue to be inadequately briefed. 
See Tex. R. App. P. 38.1(h); Tong v. State, 25 S.W.3d 707, 710 (Tex. Crim. App. 2000);
McDuff, 939 S.W.2d at 621. Issue one is overruled. (5) 

 Streby's last issue complains that the record lacks any evidence that Streby
voluntarily consented to Deputy Lagoy's search of the interior of the pickup truck. On this
issue, Streby's brief likewise fails to provide authority. The State replies, inter alia, that
Streby's consent was not needed as Deputy Lagoy's trained narcotics canine, Hank, alerted
three times while circling the truck, thus giving Lagoy probable cause for the search. The
State cites Illinois v. Caballes, 543 U.S. 405, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005). The
issue addressed in Caballes was a narrow one: "'Whether the Fourth Amendment requires
reasonable, articulable suspicion to justify using a drug-detection dog to sniff a vehicle
during a legitimate traffic stop." Id. at 407. As we read Caballes, the issue decided there
appears to be one step removed from the follow-up question of "what actions may the
authorities take, if any, in response to an alert of a drug-detection dog?" Cases appearing
more to the point are Florida v. Royer, 460 U.S. 491, 506, 103 S.Ct. 1319, 75 L.Ed.2d 229
(1983) (when using trained drug-detection dogs, "a positive result [alert by the drug-detection
dog] would have resulted in [the defendant's] justifiable arrest on probable cause."); Parker
v. State, 182 S.W.3d 923, 924 (Tex. Crim. App. 2006) ("Officer Gresham's certified
narcotics dog was conducting a canine sniff of the rental car. The dog alerted to the trunk
of the vehicle, which gave the officers probable cause to search the trunk."); Josey v. State,
981 S.W.2d 831, 846 (Tex. App.--Houston [14th Dist.] 1998, pet. ref'd) ("After Dozer
[certified narcotics detection dog] gave indications that drugs were in appellant's car,
reasonable suspicion ripened into probable cause to search the vehicle without a warrant."). 
 In the instant case, the olfactory examination of the pickup truck by Hank occurred
prior to Lagoy's search of the truck. Recall that Hank alerted twice on the passenger's side
of the vehicle and once on the driver's side. At that point, it was unnecessary for Lagoy to
secure voluntary consent from Streby to search the truck as the alerts provided Lagoy with
probable cause to conduct a search of the vehicle for contraband. Streby's fourth issue is
overruled. The judgment of the trial court is affirmed.

 AFFIRMED.

 __________________________________

 CHARLES KREGER

 Justice


Submitted on November 29, 2006

Opinion Delivered March 14, 2007

Do not publish


Before McKeithen, C.J., Kreger and Horton, JJ.
1. Although Deputy Lagoy's testimony does not make mention of it as a basis for his
suspicion, State's Exhibit 5, the videotape of the circumstances surrounding the arrest of
Streby, Allman, and Capps, indicates that Lagoy observed marijuana seeds on the front
seat of the pickup truck while he retrieved Streby's driver's license during the initial
identification process following the stop. When asked about the seeds, Streby stated they
were probably cracker crumbs. Lagoy responded to the effect that his [Lagoy's] dog
would be able to determine which it is. Shortly thereafter, Lagoy had his dog Hank
engage in the olfactory examination of the truck, which resulted in the three alerts noted
above. 
2. Because the Court of Criminal Appeals has found that using the words
"affirmative" or "affirmatively" with the word "link" adds nothing to the plain meaning
of "link," it will use only the word "link" in cases when an accused is not in exclusive
possession of the place where contraband is located "so that it is clear that evidence of
drug possession is judged by the same standard as all other evidence." See Evans, 202
S.W.3d at 161-62 n.9. 
3. The Supreme Court inserts a footnote here, and it reads, in part, as follows: 
"Contrary to the suggestion in the opinion concurring in the judgment, the criterion
announced today as the constitutional minimum required to enforce the due process right
established in Winship is not novel. See, e.g., United States v. Amato, 495 F.2d 545, 549
(CA5) ('whether, taking the view [of the evidence] most favorable to the Government, a
reasonably-minded jury could accept the relevant evidence as adequate and sufficient to
support the conclusion of the defendant's guilt beyond a reasonable doubt') (emphasis
added); United States v. Jorgenson, 451 F.2d 516, 521 (CA10) (whether, 'considering the
evidence in the light most favorable to the government, there is substantial evidence from
which a jury might reasonably find that an accused is guilty beyond a reasonable doubt')
(emphasis added)." 
4. See Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
5. It should be noted that we do not hold Streby failed to preserve this issue at the
trial court level because jury-charge error may be raised for the first time on appeal. See,
e.g., Pickens v. State, 165 S.W.3d 675, 680-81 (Tex. Crim. App. 2005); see also Almanza,
686 S.W.2d at 171-72. Streby forfeits our analysis of issue one because the issue was
inadequately briefed at the appellate level, as we discuss above.