**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Cleophas James KEARNEY,
Defendant-Appellant.**

**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Eugene LEMON, Jr.,
Defendant-Appellant.**

**Nos. 76–1320, 75–3021.**

United States Court of Appeals,
Ninth Circuit.

Aug. 22, 1977.

William A. Brockett, argued, of Kipperman, Shawn & Keker, San Francisco, Cal., for defendants-appellants.

Billie A. Rosem, argued, Crim. Div., Dept. of Justice, Washington, D. C., Dennis Michael Nerney, Asst. U. S. Atty., San Francisco, Cal., for plaintiff-appellee.

Before DUNIWAY, CARTER and CHOY, Circuit Judges.

CHOY, Circuit Judge:

Cleophas James Kearney and Eugene Lemon, Jr. appeal from their convictions for conspiring to illegally import, possess, and distribute a controlled substance, and for unlawfully distributing the same. We affirm.

## I. FACTS AND PROCEEDINGS BELOW

Kearney, Lemon, and two co-defendants, Andre Willis King and Fred Neil Powell, were charged in an eight-count indictment with various federal narcotics offenses under 21 U.S.C. §§ 841(a)(1), 846, 959 and 963. The defendants and several unindicted co-conspirators were accused of planning and executing a scheme to obtain heroin in Thailand, to transport it to Japan via military cargo channels, and then to smuggle it into the United States for ultimate sale and distribution.

In preparation for trial, and pursuant to 18 U.S.C. § 3503, the Government deposed Thomas Adams and Thomas Gamble, two unindicted accomplices who were incarcerated in Japan for violations of Japanese narcotics laws. The defendants and their counsel were permitted to attend the deposition proceedings in Japan at Government expense, but they departed on the fourth day of the Adams deposition, complaining of allegedly intolerable circumstances surrounding the taking of the depositions. The Government continued to take the remainder of Adams' deposition and all of Gamble's notwithstanding the absence of the defense. Substantial portions of these depositions were eventually presented at trial on videotape.

Jury trial commenced in San Francisco on April 28, 1975. Although Lemon and Powell were both convicted on the unlawful distribution count, the jury was unable to reach a decision as to the remaining counts and defendants, and a partial mistrial was declared. Upon retrial, with all objections to the deposition proceedings made at the first trial incorporated by reference, Kearney was acquitted on the charge of unlawful distribution of a controlled substance intended for importation into the United States, but was convicted, along with Lemon, on the rest of the counts. Both were sentenced to 25-year terms of incarceration.

## II. ISSUES

Kearney and Lemon raise several issues on appeal, five of which have already been resolved against them in the related appeal of co-defendants King and Powell, *United States v. King,* 552 F.2d 833 (9th Cir. 1976), *cert. denied,* 430 U.S. 966, 97 S.Ct. 1646, 52 L.Ed.2d 357 (1977). Accordingly, the following issues and allegations of error do not merit further discussion here: (1) the facial unconstitutionality of 18 U.S.C.

§ 3503, see 552 F.2d at 838–41; (2) the unconstitutionality of § 3503 as applied, see 552 F.2d at 841–44; (3) the denial of effective assistance of counsel, see id.; (4) the need for a curative instruction with respect to co-conspirators' statements, see id. at 846–49; and (5) whether the trial court's rereading of a portion of the deposition testimony to the jury was an abuse of discretion, see id. at 849–50. With respect to these issues, we adhere to our holdings in *King* that the district court did not err.

New issues raised here by appellants will be considered below.

### A. *Joinder of Conspiracies*

■ Appellants assert that the Government swept several discrete conspiracies into a single conspiracy count, and that this was a misjoinder which worked to their prejudice, effecting "guilt transference" by associating them with co-defendants involved in other criminal acts. In so contending, appellants confuse *separate acts at separate times* with *separate conspiracies.* Almost any venture, criminal or legitimate, is analyzable into a series of bits, each of which, in turn, is characterizable as an independent plan or goal. The standard for determining the existence of a single conspiracy, however,

" . . . is whether there was one overall agreement among the various parties to perform various functions in order to carry out the objectives of the conspiracy . . ."

*United States v. Hobson,* 519 F.2d 765, 775 (9th Cir.), *cert. denied,* 423 U.S. 931, 96 S.Ct. 283, 46 L.Ed.2d 261 (1975), *quoting United States v. Ellsworth,* 481 F.2d 864, 869 (9th Cir.), *cert. denied,* 414 U.S. 1041, 94 S.Ct. 544, 38 L.Ed.2d 332 (1973).

■ Here, the evidence is clearly sufficient to show one overall scheme. The Government proved that each defendant knew, or had reason to know, that others were involved in a broad project for the illegal transportation and distribution of narcotics, and that his benefits were probably dependent upon the success of the entire operation. *See United States v. Monroe,* 552 F.2d 860, 862–63 (9th Cir. 1977); *United States v. Baxter,* 492 F.2d 150, 158 (9th Cir. 1973), *cert. denied,* 416 U.S. 940, 94 S.Ct. 1945, 40 L.Ed.2d 292 (1974). Proof that an alleged co-conspirator knew that he was plotting in concert with others to violate the law is sufficient to raise the necessary inference that he joined in the overall agreement. *See Daily v. United States,* 282 F.2d 818, 820 (9th Cir. 1960). It need not even be shown that an alleged co-conspirator knew all of the purposes of and all of the participants in the conspiracy. *Hobson, supra* at 775. Once the existence of a conspiracy is independently shown, only slight evidence is necessary to connect a defendant to it. *United States v. Peterson,* 549 F.2d 654, 657 (9th Cir. 1977).

An examination of the record shows that both appellants were involved in the same conspiracy as co-defendants King and Powell and the unindicted co-conspirators. Indeed, there was ample evidence that Kearney and Lemon were far more than mere "messenger boys," the characterization offered by them to minimize the importance and intimacy of their involvement.[1] The evidence reveals that appellants knew they were engaged with others in a single, though geographically and temporally extensive, criminal venture for the smuggling and distribution of narcotics. *Compare Baxter,* 492 F.2d at 158 & n.7.[2] Nothing in

---

1. The evidence shows that Kearney delivered contraband at U–Tapao Air Force Base in Thailand for shipment to Japan. He accepted heroin in California and transferred money from sales to Gamble. His travels in furtherance of the venture took him from Thailand to Japan to the United States.

Lemon had direct contact with all three of the other indicted co-conspirators. He traveled between Thailand and Japan on an apparently unsuccessful narcotics purchasing mission.

The evidence further places him with smuggled heroin at Travis Air Force Base in California. He cut and packaged heroin brought into the United States by another participant in the conspiracy. Lemon was also involved with the transfer of illicit funds derived from sales of the contraband.

2. Appellants rely on *United States v. Hutul,* 416 F.2d 607 (7th Cir. 1969), *cert. denied,* 396 U.S. 1012, 90 S.Ct. 573, 24 L.Ed.2d 504 (1970), for

*United States v. Ingman,* 541 F.2d 1329 (9th Cir. 1976)—involving two "hub" conspirators, two groups of conspirators, two geographic areas, two time spans, and hence two conspiracies—provides authority for a contrary conclusion. There was no misjoinder.

■ Appellants also argue that they were entitled to a jury instruction on the potential for finding multiple conspiracies under *Kotteakos v. United States,* 328 U.S. 750, 767–77, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946). We disagree. Having carefully reviewed the record, we conclude that there was no variance between the allegations of the indictment and the evidence presented at trial. The court's instructions on this issue were sufficient. *See Hobson,* 519 F.2d at 775; *United States v. Polizzi,* 500 F.2d 856, 877 (9th Cir. 1974), *cert. denied,* 419 U.S. 1120, 95 S.Ct. 802, 42 L.Ed.2d 820 (1975); *Ellsworth,* 481 F.2d at 869.

### B. *Further Trial Objections to Deposition Testimony*

Appellants aver that the district court erred in failing to entertain objections at trial regarding the admissibility of portions of the videotape deposition testimony taken after appellants and their counsel departed the proceedings in Japan. They contend that the court improperly relied upon the newly revised Federal Rule of Criminal Procedure 15(f) in advance of its effective date.[3] The Government responds that, rather than there having been a prospective application of Rule 15(f), under 18 U.S.C. § 3503(b) itself,[4] unjustified absence from the deposition proceedings waived all objections to the taking and use of the depositions.[5]

We addressed the scope of § 3503(b) in *King.* There, we held in the alternative that, at least for purposes of objection under the confrontation clause—as an objection dependent upon the right to be present—the defendants had waived objections to the taking and use of the testimony. 552 F.2d at 843–44. In a later portion of that opinion, however, we also noted that a § 3503(b) waiver might not be broad enough to eliminate procedurally all other objections, 552 F.2d at 847, and we then addressed and resolved the merits of an objection to the timing of a requested curative instruction, *see id.* at 847–49.

Section 3503(g) calls for objection to deposition evidence "as provided in civil ac-

---

the proposition that a single conspiracy is indicated by the presence of factors such as a short time span of operations and a small number of conspirators, factors they submit are absent here. Even assuming that the *Hutul* test is valid, however, the court there nowhere suggests that those criteria constitute the *exclusive* determinants for the presence of a single conspiracy. Indeed, we are satisfied that the instant facts meet the *Hutul* observation that "[e]ach defendant did his part in promoting the venture and providing a necessary link in the scheme." *Id.* at 619.

3. Amended Rule 15(f), which became effective December 1, 1975, several months after appellants' second trial, provides:

Objections to deposition testimony or evidence or parts thereof and the grounds for the objection shall be stated at the time of the taking of the deposition.

4. Section 3503(b) provides, in relevant part: A defendant not in custody shall have the right to be present at the examination, but his failure, absent good cause shown, to appear after notice and tender of expenses shall constitute a waiver of that right and of any

objection to the taking and use of the deposition based upon that right.

5. The Government also argues that *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938) (waiver defined as "an intentional relinquishment or abandonment of a known right or privilege"), provides additional authority in support of the conclusion that appellants have waived *all* objections to the deposition evidence by their absence from the proceedings in Japan. While we agree that the general principle of *Johnson v. Zerbst* can work a waiver in certain circumstances, here the Government has failed to articulate a basis for determining the scope of the potential waiver either as to precisely *what* may have been waived, or the purposes for *which* the waiver may be held effective. In any event, we think that, since appellants avow reliance upon § 3503(g) and the civil rules, they cannot be said to have "intentionally" abandoned all rights to object later to the deposition evidence solely by dint of their departure from Japan. *See United States v. King,* 552 F.2d 833, 843–44, 846–47 (9th Cir. 1976), *cert. denied,* 430 U.S. 966, 97 S.Ct. 1646, 52 L.Ed.2d 357 (1977).

tions," and, in turn, under the relevant civil rules, only objections which can be obviated if presented at the time of the taking of the deposition are waived if not presented at that time, Fed.R.Civ.P. 32(d)(3)(A) & (B).[6] We therefore do not agree with the extensive sweep of the Government's contention.

There is a dispute in the record as to whether the defense was afforded an opportunity, during the pretrial videotape editing proceedings, to supplement objections made while present at the Adams deposition with further objections on various grounds to portions of the Adams and Gamble depositions taken while defendants and their counsel were absent. Were it shown that the district court gave clear notice that the time to interpose objections to videotape evidence was during the pretrial proceeding—the function of which was to prepare, in advance of courtroom presentation, a manageably edited tape—and that, in the face of such notice, a party nevertheless declined to offer such objections as he had, yet another waiver theory might be advanced. Rule 32 does not go so far as to provide litigants with a blanket, affirmative right to *first* raise objections during the trial itself in every instance, *see Baha-*

*mas Agricultural Indus. Ltd. v. Riley Stoker Corp.,* 526 F.2d 1174, 1181 (6th Cir. 1975), for adequate objection at the pretrial stage would preserve the issue for later appeal, *see Lawn v. United States,* 355 U.S. 339, 353, 78 S.Ct. 311, 2 L.Ed.2d 321 (1958), and there is no right to have the district judge rehear the same objections numerous times and again at trial. *See* Fed.R.Civ.P. 32(b) ("objection may be made at the trial or hearing").

■ But here, even assuming that appellants were entitled to present further objections at trial and were denied that right, those objections presented to us on appeal are clearly insufficient to warrant reversal. Admission of the five isolated "examples" of allegedly objectionable testimony, especially in the face of the substantial and compelling evidence against appellants introduced at trial, was, if error at all, clearly harmless. Fed.R.Crim.P. 52(a). *See, e. g., United States v. Gutierrez-Espinosa,* 516 F.2d 249, 250 (9th Cir. 1975); *United States v. King,* 472 F.2d 1, 5 (9th Cir. 1972), *cert. denied,* 414 U.S. 864, 94 S.Ct. 37, 38 L.Ed.2d 84 (1973); *United States v. Miller,* 508 F.2d 444, 450–51 (7th Cir. 1974).[7]

---

**6.** Rule 32(d)(3)(A) & (B) provides:

(A) Objections to the competency of a witness or to the competency, relevancy, or materiality of testimony are not waived by failure to make them before or during the taking of the deposition, unless the ground of the objection is one which might have been obviated or removed if presented at that time.

(B) Errors and irregularities occurring at the oral examination in the manner of taking the deposition, in the form of the questions or answers, in the oath or affirmation, or in the conduct of parties, and errors of any kind which might be obviated, removed, or cured if promptly presented, are waived unless seasonable objection thereto is made at the taking of the deposition.

Section 3503(g) was in effect throughout the period of time relevant to the instant case. We note that former Federal Rule of Criminal Procedure 15(f) stated—in terms virtually identical to those of § 3503(g)—that "objections may be made as provided in civil actions." We have no occasion here to pass on the potential conflict between the provisions of § 3503(g), which remain in effect, and those of amended Rule 15(f), which became effective in December 1975, *see* note 3 *supra.* We also do not decide here whether waiver provisions limited to ob-

jections based upon "the right to be present" and those limited to the failure of seasonable objection to enable the prompt obviation, removal, or cure of the alleged error are congruent. Although there was a dearth of analysis on both sides with respect to this issue, and especially as to the precise nature of appellants' objections, it is at least conceivable that some objections were waived under the civil standards for failure to timely object where curable. *See, e. g., Batelli v. Kagan & Gaines Co.,* 236 F.2d 167, 170 (9th Cir. 1956); *Bahamas Agricultural Indus. Ltd. v. Riley Stoker Corp.,* 526 F.2d 1174, 1181 (6th Cir. 1975); *Trapp v. 4–10 Investment Corp.,* 424 F.2d 1261, 1267 (8th Cir. 1970); *Cordle v. Allied Chem. Corp.,* 309 F.2d 821, 825–26 (6th Cir. 1962).

**7.** The following "examples" of error are cited in appellants' opening brief. Deponent Gamble's testimony as to the verification of the strength of the illicit narcotics by providing a sample to a professional test-user (a "gunman") was probative of the conspirators' knowledge that they were in possession of contraband, despite appellants' claim that the evidence was unduly prejudicial. His statement that "they" were getting rid of heroin as far as he knew was ambiguous, only tenuously linked

### C. Instruction on Witnesses' Credibility

Because deponents Adams and Gamble had been convicted of narcotics offenses under Japanese laws modeled after United States federal statutes and were serving sentences in excess of one year, appellants contend that the trial court's refusal to instruct the jury about the possible effect of a felony conviction on a witness' credibility was error. There are two grounds for sustaining the district court. The first is procedural. The court's stated basis for refusing to give the instruction was that, under the requirement of Federal Rule of Criminal Procedure 26.1, a party intending to raise an issue concerning the law of a foreign country—here, the Japanese narcotics statutes and the convictions obtained pursuant to them—"shall give" reasonable written notice, which appellants failed to provide. They thus failed to prove that the deponents had been convicted of a felony within the meaning of the requested instruction. *See* Fed.R.Crim.P. 26.1, Note of Advisory Committee on Rules.

The second ground is substantive. Though the proposed instruction was refused, the court did give lengthy instructions on the credibility of witnesses generally, and accomplices specifically. In analyzing a similar situation, the Seventh Circuit has persuasively observed that, where from other evidence the jury knew of the Government witness' prior conviction, the general credibility instruction "obviated" the need for a separate prior conviction instruction. *United States v. Bambulas*, 471 F.2d 501, 505 (7th Cir. 1972). *See Hisaji Watada v. United States*, 301 F.2d 869 (9th Cir. 1962) (per curiam) (failure to specifically instruct on the credibility of a prostitute's testimony not error where general instructions were sufficient); *Chargois v. United States*, 267 F.2d 410, 412 (9th Cir. 1959) (same). Here,

the jury knew that the deponents were under sentence pursuant to a criminal conviction, even if under foreign law, because of the circumstances under which the depositions were taken: Questions and answers on the deposition videotape clearly revealed the nature of Adam's and Gamble's residence at Yokosuka Prison in Japan. We conclude that the failure to give the disputed instruction was not error.

### D. Consecutive Sentences and the "Same Evidence" Rule

Appellants challenge their consecutive sentences for the conspiracy and the substantive offenses as a violation of the fifth amendment double punishment prohibition. In support of this argument, they cite *United States v. Austin*, 529 F.2d 559 (6th Cir. 1976), which held that the Constitution forbids consecutive sentences where they are imposed for essentially the same offenses proven by the same evidence.

Conspiracy and substantive offenses have been traditionally treated as separately chargeable—and punishable—crimes. *See Iannelli v. United States*, 420 U.S. 770, 777–78, 95 S.Ct. 1284, 43 L.Ed.2d 616 (1975); *Pereira v. United States*, 347 U.S. 1, 11, 74 S.Ct. 358, 98 L.Ed. 435 (1954). This rule is widely followed, the enhancement of both the danger to society and the difficulty of law enforcement brought about by the concert of action between co-conspirators justifying the separate statuses. *See Iannelli, supra; Callanan v. United States*, 364 U.S. 587, 593–94, 81 S.Ct. 321, 5 L.Ed.2d 312 (1961); *Pinkerton v. United States*, 328 U.S. 640, 643–44, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946).

The functional rule appellants argue for here—the barring of conviction on a separate conspiracy charge when the defendant

---

to appellants, and, indeed, so speculative that it is unclear how appellants could have been harmed. Gamble's conclusion that co-defendant Powell's desire to get heroin to the "world" meant to the United States was, like the aforementioned reference to "they", absolutely unnecessary to sustain appellants' convictions when the entirety of the evidence—documentary, circumstantial, and direct—is considered.

Lemon's apparent offer of a "California reefer" to Kearney, though perhaps irrelevant to the charged offenses and somewhat prejudicial, can scarcely be termed so harmful as to justify a reversal in light of all the other evidence against appellants. The final assignment of error, a reference to attempted phone calls to Lemon from Japan—elicited by *defense* counsel on cross-examination—is frivolous.

has been convicted at the same time of the substantive offense—has been the subject of some scrutiny in this circuit. It has been suggested that the existing rule be re-examined and abandoned, citing California's analysis and rejection of the rule as rightly reasoned. *United States v. Vaught*, 434 F.2d 124, 125 (9th Cir. 1970) (Ely, J., concurring), *cert. denied*, 401 U.S. 976, 91 S.Ct. 1197, 28 L.Ed.2d 326 (1971), *citing In re Romano*, 64 Cal.2d 826, 51 Cal.Rptr. 910, 415 P.2d 798 (1966), & Cal.Penal Code § 654 (West 1957). A later holding, while noting the reservations expressed in *Vaught*, adhered to the rule of separate offenses. *United States v. Fishbein*, 446 F.2d 1201, 1205 & n.1 (9th Cir. 1971), *cert. denied*, 404 U.S. 1019, 92 S.Ct. 683, 30 L.Ed.2d 667 (1972). *See United States v. Ketola*, 455 F.2d 83, 85 (9th Cir.), *vacated and remanded on another ground*, 409 U.S. 815, 93 S.Ct. 139, 34 L.Ed.2d 72 (1972), *aff'd on remand*, 478 F.2d 64, *cert. denied*, 414 U.S. 847, 94 S.Ct. 133, 38 L.Ed.2d 95 (1973). *See also Gore v. United States*, 357 U.S. 386, 389–90, 78 S.Ct. 1280, 2 L.Ed.2d 1405 (1958) (noting that Congress' desire to isolate and punish narcotics offenses is particularly keen); *United States v. Marotta*, 518 F.2d 681 (9th Cir. 1975) (citing *Gore* and upholding the distinction between conspiracy to possess a controlled substance with intent to distribute and conspiracy to import same into the United States as separate offenses). In any event, the general rule of separate offenses remains the doctrine of this circuit. *See, e. g., United States v. Ohlson*, 552 F.2d 1347, 1348 (9th Cir. 1977).

Nor does the recent approach of the Sixth Circuit in *Austin, supra*—a case not discussed in *Ohlson*—persuade us to reconsider the long-standing rule of this circuit. Under the test articulated in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 40, 76 L.Ed. 520 (1932), for determining whether separate punishments may be imposed for convictions on both conspiracy and substantive counts, courts must assess the statutory offenses to ascertain "whether each provision requires proof of a fact which the other does not." Here, a conspiracy conviction requires proof of an agreement and but

one overt act in furtherance thereof; the substantive offenses require proof of actual importation, possession, and distribution. *Compare* 21 U.S.C. §§ 846 & 963 *with id.* §§ 841(a)(1) & 959. The Government's evidence on the conspiracy charges showed the existence of the necessary agreement and the commission of at least one overt act. The additional activities proved go to the substantive counts and are not subject to attack under the asserted *Austin* "same evidence" rule. Indeed, the *Iannelli* Court's recent reiteration of the applicable standard reveals that it is clearly met here:

> As *Blockburger* and other decisions applying its principle reveal, . . . the Court's application of the test focuses on the statutory elements of the offense. If each requires the proof of a fact that the other does not, the *Blockburger* test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes.

*Iannelli*, 420 U.S. at 785 n. 17, 95 S.Ct. at 1294.

The congruence of proof between conspiracy and substantive counts required to make out a double jeopardy violation, *see Pereira*, 347 U.S. at 11, 74 S.Ct. 358, thus "does not turn on the identity of evidence actually produced but on whether the same evidence is *required* to prove the two offenses." *United States v. Boyle*, 157 U.S. App.D.C. 166, 482 F.2d 755, 766 (emphasis in original), *cert. denied*, 414 U.S. 1076, 94 S.Ct. 593, 38 L.Ed.2d 483 (1973). Indeed, the argument that there should be a merger of conspiracy and substantive charges where the same evidence is used to prove both counts was recently rejected by us in *Ohlson, supra* at 1348–1350. There we noted that, in accordance with *Boyle*, the applicability of the merger rule "depends not on the evidence offered at trial but rather on the statutory requirements of the substantive offense," *id.* at 1349 and that such merger is limited to the classic Wharton's Rule context. Wharton's Rule, which restricts the addition of a conspiracy count where, by the nature of the substantive count, the essential participants are the

*only* conspirators, *see United States v. Rueter*, 536 F.2d 296, 298 (9th Cir. 1976); *Baker v. United States*, 393 F.2d 604, 610 (9th Cir.), *cert. denied*, 393 U.S. 836, 89 S.Ct. 110, 21 L.Ed.2d 106 (1968), is inapposite here. The conspiracy count charges the existence of an agreement to import heroin into the United States, and then to possess and distribute it, while the substantive counts charge actual importation, possession, and distribution, and thus, since the substantive counts can be committed by an individual, the Rule has no bearing. *See Iannelli*, 420 U.S. at 785, 95 S.Ct. 1284; *Rueter, supra* at 298.[8]

■ The properly distilled rule of law applicable here is thus the "required proof" test of *Boyle* and *Ohlson*, not the simplistic "same evidence" rule of *Austin*.[9] In *Boyle* and *Ohlson*, as here, the requirements for a conspiracy conviction were identified as proof of an agreement among the co-con-spirators and at least one overt act in furtherance of that agreement. *See United States v. Feola*, 420 U.S. 671, 694, 95 S.Ct. 1255, 43 L.Ed.2d 541 (1975); *United States v. Monroe*, 552 F.2d 860, 862 (9th Cir. 1977). Ultimate consummation of the scheme is not essential to completing the crime of conspiracy. The converse, of course, is also true: Conviction on a substantive count will lie without proof of any agreement to commit the crime. In short, evidence showing an agreement is quite different from evidence showing that the plan was carried out. We conclude that the district court did not err in sentencing appellants separately and consecutively on the conspiracy and substantive counts.

### E. *Competence of Counsel*

Appellants urge that failure to raise the issue of misjoinder of conspiracies below, failure to object to certain evidence, and an

---

**8.** Wharton's Rule is considered to be an aid to statutory construction—rather than a controlling principle of law—in the form of a presumption that, in certain circumstances, the legislature intended a merger of conspiracy and substantive counts. *See United States v. Rueter*, 536 F.2d 296, 298 (9th Cir. 1976). Where the legislature indicates an intent to maintain separate statuses for conspiracy and the substantive offense, either in the statutory language or the legislative history, the presumption can be overcome, even if the case were otherwise an appropriate situation for operation of the Rule. *See United States v. Ohlson*, 552 F.2d 1347, 1348–1349 (9th Cir. 1977).

While the instant case is inappropriate for application of the Rule, we note that the statutes at issue here also reveal an intended distinction between conspiracy and the substantive offenses. The definitions of unlawful importation, possession, and distribution of controlled substances, 21 U.S.C. §§ 841(a)(1) & 959, do not contain an element of agreement or concert of action. Moreover, the inclusion of separate conspiracy provisions, 21 U.S.C. §§ 846 & 963, in both relevant subchapters of the Drug Abuse Prevention and Control chapter of Title 21 is sufficient indication that Congress intended those sections to stand as offenses distinct from the general conspiracy crime. *See Ohlson, supra* at 1348–1349. *See also United States v. Ortiz-Martinez*, 557 F.2d 214, 215–217 (9th Cir. 1977).

**9.** The *Austin* court has apparently extended the protections of Wharton's Rule beyond generally recognized bounds. There, the appellant,

one of six indicted co-conspirators, had been convicted of aiding and abetting the offering of a bribe, of accepting a bribe, and of conspiracy to commit the substantive offenses. Without mention of Wharton's Rule as such, or its limitations, the Sixth Circuit held that, where the substantive counts "in effect" charge the same concert of action on the part of two *or more* co-conspirators as charged in the conspiracy count, and where evidence of the substantive offenses, as alleged, proves every essential element of the conspiracy, unequal concurrent sentences (and, presumably, all consecutive sentences) violate the fifth amendment double punishment provision. *See* 529 F.2d at 563–64.

Because the instant case involves more than the essential number of conspirators as well as substantive offenses which do not *require* concerted activity, we are not faced with a prima facie case for the application of the Rule, and we need not comment on the wisdom of the *Austin* court's extension of it. We do note, however, that the prevailing view, and the one followed in this circuit, *see Rueter, supra* at 298; *Baker, supra* at 610, is that Wharton's Rule does not apply where the number of co-conspirators exceeds the number of participants essential to the commission of the contemplated substantive offense. *See Iannelli*, 420 U.S. at 770, 782 n. 15, 95 S.Ct. 1284; *Gebardi v. United States*, 287 U.S. 112, 122 n. 6, 53 S.Ct. 35, 77 L.Ed. 206 (1932). *See generally Iannelli, supra* at 771–91, 95 S.Ct. 1284; W. LaFave & A. Scott, Handbook on Criminal Law 491–94 (1972).

alleged general lack of initiative on the part of trial counsel mandate a finding that there was a deprivation of effective representation. Both sides assume that our standard on review of a competency question is whether the quality of representation rendered was so low that the trial became a "farce or mockery of justice." *See United States v. Martin*, 489 F.2d 674, 677 (9th Cir. 1973), *cert. denied*, 417 U.S. 948, 94 S.Ct. 3073, 41 L.Ed.2d 668 (1974). Assuming that the "farce or mockery" standard is appropriate, appellants urge the reexamination of the test and the substitution of a "normal competence" guideline, citing *United States ex rel. Johnson v. Johnson*, 531 F.2d 169, 174–77 (3d Cir. 1976) (standard not invoked to find counsel ineffective).

There is some question, however, as to the standard of review to be employed in light of *de Kaplany v. Enomoto*, 540 F.2d 975, 987 (9th Cir. 1976) (en banc), *cert. denied*, 429 U.S. 1075, 97 S.Ct. 815, 50 L.Ed.2d 793 (1977). In *de Kaplany*, this court

> identified three alternate standards by which to review the performance of counsel: (1) whether counsel's performance was "so poor and incompetent as to make the trial a farce or mockery of justice"; (2) "whether the circumstances show a denial of fundamental fairness"; and (3) whether there was a "lack of effective aid in the preparation and trial of the case—lack of counsel likely to render and rendering reasonably effective assistance."

*United States v. Lemon*, 550 F.2d 467, 473 (9th Cir. 1977), *quoting de Kaplany*, 540 F.2d at 987. We concluded there that, under each of the standards, the result was the same, without providing a clear holding as to which standard, if any of the three, was proper.

■ We do not find it necessary to analyze the ramifications of the "normal competence" test because we conclude that, as in *de Kaplany*, the conduct of defense counsel was sufficient under each of the three standards cited there. *Compare United States v. Eaglin* (9th Cir. 1977) (No. 75–2720, Aug. 10, 1977) (slip op. at 1815–

17); *Greenfield v. Gunn*, 556 F.2d 935, 938 (9th Cir. 1977); *Lemon, supra*. This court generally declines to question defense trial tactics in retrospect. *See, e. g., Eaglin, supra* at (slip op. at 1816–17); *United States v. Stern*, 519 F.2d 521, 524 (9th Cir.), *cert. denied*, 423 U.S. 1033, 96 S.Ct. 565, 46 L.Ed.2d 407 (1975). Indeed, it would be a conundrum in logic to find counsel ineffective for failing to raise objections at trial to determinations ultimately sustained here on appeal. *See, e. g., Lemon, supra*. We further discern no general lack of initiative. Counsel below participated in the deposition proceedings in Japan and conducted adequate cross-examination at trial. Appellants have advanced neither arguments why, in the first instance, we should consider the adoption of the suggested "normal competence" standard, nor reasons why the representation below would not satisfy the contours of that standard were it adopted. Defendants here were convicted not by reason of inadequate representation, but rather by the weight of the evidence against them. *See United States v. Valenzuela-Mendoza*, 452 F.2d 773, 774 (9th Cir. 1971).

### F. Other Contentions

**1. Publication of Controlled Substances Schedules**

■ Appellants advance the claim that the controlled substances schedules established by 21 U.S.C. § 812(a) were not republished as required by that section, and that all federal statutes referring to "controlled substances" are, therefore, void *ab initio*. This species of notice defense is by now wholly frivolous. We have rejected it—and its variants—on three recent occasions. *See United States v. Monroe*, 552 F.2d 860, 861–62 (9th Cir. 1977); *United States v. Grummel*, 542 F.2d 789, 791–92 (9th Cir. 1976), *cert. denied*, 429 U.S. 1051, 97 S.Ct. 763, 50 L.Ed.2d 767 (1977); *United States v. Eddy*, 549 F.2d 108, 111–13 (9th Cir. 1976). The § 812(a) publication requirement is satisfied by annual, updated republication in the *Code of Federal Regulations*. Since the schedules were in effect at all times relevant to the instant use, the indictments

against appellants validly stated federal offenses.

## 2. Introduction of Allegedly Prejudicial Evidence

 Appellants argue that admission of evidence of the smuggled narcotics' street value and of possession of a loaded weapon by Lemon was prosecutorial misconduct, "manifestly prejudic[ial]," and reversible error. Evidence of the monetary value of illicit narcotics is relevant to show a defendant's intent to distribute it, *Gutierrez-Espinosa*, 516 F.2d at 250, and his knowledge of his possession of the heroin, see *Gaylor v. United States*, 426 F.2d 233, 235 (9th Cir. 1970). *United States v. Golden*, 532 F.2d 1244, 1247 (9th Cir. 1976). Possession of a firearm demonstrates the likelihood that a defendant took steps to prevent contraband or money from being stolen. *See United States v. Pentado*, 463 F.2d 355, 360 (5th Cir. 1972), *cert. denied*, 410 U.S. 909, 93 S.Ct. 963, 35 L.Ed.2d 271 (1973). District judges have great latitude in passing on the admissibility of evidence, and admission will not be overturned on appeal absent an abuse of discretion. *See Pentado, supra*. We find no abuse of discretion.

## 3. Jury Instructions

 Appellants complain that the district court erroneously gave jury instructions which included language that has been criticized by this court. Because appellants failed to object to these instructions below—and, indeed, appellants themselves proffered the instructions at issue— our review of potential error is governed by the standards of Federal Rule of Criminal Procedure 52(b). Having considered the instructions as a whole, we conclude that there was no error and that the jury was properly charged. *See United States v. Clay*, 476 F.2d 1211, 1214–15 (9th Cir. 1973); *United States v. Scarbrough*, 470 F.2d 166, 169 (9th Cir. 1972); *United States v. Cummings*, 468 F.2d 274, 280–81 (9th Cir. 1972); *Malagon-Ramirez v. United States*, 404 F.2d 604, 605 (9th Cir. 1968).

## 4. Length of Sentences

 In challenging the length of their sentences, appellants assert that, considering their self-characterized "small fry" participation in the conspiracy, the district court abused its discretion in meting out the 25-year sentences it did. Appellants somewhat belatedly concede, however, that co-defendant Powell is in fact serving a more severe 35-year sentence. A federal trial judge has wide discretion in imposing sentence, and where, as here, the sentence pronounced is within statutorily-prescribed limits, it is generally not subject to review. *See United States v. Tucker*, 404 U.S. 443, 447, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972); *United States v. Lustig*, 555 F.2d 737, 751 (9th Cir. 1977); *United States v. Perri*, 513 F.2d 572, 575 (9th Cir. 1975). There has been no misinformation of constitutional dimension, *see Tucker, supra*, to warrant an exception to this rule. While appellants choose to paint the picture of their involvement with small-gauge brushes, the picture itself is large. Their participation was early, fundamental, and substantial.[10] Their sentences will not be disturbed.

## 5. Conspiracy Count Reversal as Mandating Substantive Count Reversal

Appellants reason, without offering apposite authority, that once the depositions at issue here are ruled inadmissible, reversal of the conspiracy counts is required, which, in turn, mandates reversal of the substantive counts. This argument is without merit, but we need not reach it, for the depositions were admissible as constitutionally healthy.

The convictions on all counts are

AFFIRMED.

---

**10.** *See* note 1 *supra*.